No. 10-1794

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

STEPHEN C. VENEKLASE AND REBECCA S. VENEKLASE

    Plaintiffs - Appellants,

v

BRIDGEWATER CONDOS, L.C., a Michigan limited liability company

    Defendant - Appellee

On Appeal from the United States District Court
for the Western District of Michigan

## APPELLANT BRIEF OF PLAINTIFFS-APPELLANTS
## STEPHEN C. VENEKLASE AND REBECCA S. VENEKLASE

David W. Charron (P39455)
Heidi L. Hohendorf (P68944)
Charron & Hanisch, PLC
Attorneys for Plaintiffs-Appellants
4949 Plainfield Ave NE
Grand Rapids, MI 49525
(616) 363-0300

**ORAL ARGUMENT REQUESTED**

# <u>DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST</u>

Plaintiff-Appellant Stephen C. Veneklase and Plaintiff-Appellant Rebecca S. Veneklase make the following disclosure under 6th Cir. R. 26.1:

1.  Is said party a subsidiary or affiliate of a publicly-owned corporation? If yes, list below the identify of the parent corporation or affiliate and the relationship between it and the named part:

    No.

2.  Is there a publicly-owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identify of such corporation and the nature of the financial interest:

    No.

Dated: August 3, 2010

/s/David W. Charron
David W. Charron
Attorney of Record for Plaintiffs-Appellants Stephen and Rebecca Veneklase

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL
    INTEREST .......................................... ii

TABLE OF CONTENTS ......................................... iii

TABLE OF AUTHORITIES ...................................... v

STATEMENT IN SUPPORT OF REQUEST FOR ORAL ARGUMENT .... viii

JURISDICTIONAL STATEMENT ................................. 1

STATEMENT OF ISSUES ...................................... 2

STATEMENT OF THE CASE ................................... 3

STATEMENT OF FACTS ...................................... 6

SUMMARY OF ARGUMENT .................................... 12

STANDARD OF REVIEW ..................................... 14

ARGUMENT ............................................... 15

I.    THE DISTRICT COURT ERRED IN DISMISSING THE
    VENEKLASES' CLAIM FOR RELIEF UNDER ILSFDA ........... 15

    A.    The District Court's Interpretation Of ILSFDA, Concerning
        The Right To Rescission Under §1703(c) Thereof, Is
        In Contravention To The Intent Of Congress ................ 15

    B.    The District Court Improperly Dismissed The Veneklases'
        Right To Seek Equitable Rescission Under §§ 1709(a)
        And (b) Of ILSFDA, Despite The Existence Of A Genuine
        Issue Of Material Fact .............................. 21

    C.    The District Court Committed Error By Improperly Dismissing
        The Veneklases' Claim For Relief Under ILSFDA, In Its Entirety,
        Without Ever Adjudicating Or Addressing The Veneklases'
        Request For Damages Under §1709(b) Of ILSFDA ............ 26

II.     THE DISTRICT COURT ERRED IN FAILING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS WHEN ISSUES OF FEDERAL QUESTION STILL REMAINED IN THE DISTRICT COURT .................. 28

III.    THE DISTRICT COURT COMMITTED ERROR BY AWARDING BRIDGEWATER THE VENEKLASES' CASH DEPOSIT ON THE PURCHASE AGREEMENT. ............................. 30

       A.      The District Court May Not Both Rule On A State Law Claim And Dismiss The Same State Law Claim Concurrently. ......... 30

       B.      The District Court Improperly Awarded Bridgewater the Veneklases' Cash Deposit Without An Adjudication Of The State Law Claims On Their Merits. ...................... 33

RELIEF REQUESTED ........................... 37

CERTIFICATE OF COMPLIANCE ................... 38

CERTIFICATE OF SERVICE ...................... 39

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..... 40

ADDENDUM TO BRIEF (*Hunter v. Estee*, 363 Fed.Appx. 538, 540 (2010)) . 42

# TABLE OF AUTHORITIES

**Cases**

*200 East Partners LLC v. Gold*, 997 So.2d 466 (Fla. 4th DCA 2008) . . . . . 15, 20

*Engine Manufacturers Association v. South Coast Air Quality Management District*, 541 U.S. 246, 252 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Hunter v. Estee*, 363 Fed.Appx. 538, 540 (2010) . . . . . . . . . . . . . . . . . . . . . . . . 30

*Jankus v. The Edge Investors, L.P.*, 619 F.Supp.2d 1328 (S.D.Fla April 8, 2009) . . . . . . . . . . . . . . . . . . . . . . . . 12, 17, 18, 19, 20

*Jankus v. The Edge Investors, L.P.*, 650 F.Supp.2d 1248 (S.D.Fla August 31, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Koenig Sporting Goods, Inc. v Morse Road Company (In Re Koenig Sporting Goods, Inc)*, 203 F.3d 986, 988 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . 14

*Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989) . . . . . . . . . . 14

*May v. Franklin County Commissioners*, 437 F.3d 579 (6th Cir. 2006) . . . . . . 32

*Negonsott v. Samuels*, 507 U.S. 99, 104 (1993) . . . . . . . . . . . . . . . . . . . . . . . . 25

*Plant v. Merrifield Town Center Ltd. Partnership*, - - - F.R.D. - - -, 2010 WL 1039875 (E.D. Va, March 18, 2010) . . . . . . . . . . . 12, 21, 22, 23

*Plaza Court, LP v Baker-Chaput*, 17 So.3d 720, (2009) . . . . . . . . . . . . . . . . . . 19

*Quackenbush v. Allstate Insurance Company*, 517 U.S. 706, 716 (1996) . . . 29

*Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . 14

*Soliday v. Miami County*, 55 F.3d 1158, 1164 (6th Cir. 1995) . . . . . . . . . . . . . 14

*Taylor v. Holiday Isle, LLC*, 561 F.Supp.2d 1269 (S.D.Ala., 2008). . 12,17,19,20,27

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966) . . . . . 30, 32

*Winter v. Hollingsworth Properties, Inc.*, 777 F.2d 1444, 1447-48 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

**Statutes**

15 U.S.C. § 1701, et. seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

15 U.S.C. § 1703 . . . . . . . . . . . . . . . . . . . . . 17, 19, 22, 23, 24, 25

15 U.S.C. § 1703(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

15 U.S.C. § 1703(c) . . . . . . . . . . . . . . . . . . . 8, 12, 15, 16, 17, 18, 20, 21, 22, 24

15 U.S.C. § 1703(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

15 U.S.C. § 1709 . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 23, 24, 25, 26

15 U.S.C. § 1709(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 21, 22

15 U.S.C. § 1709(b) . . . . . . . . . . . . . . . . . . . . . . . 12, 21, 22, 26, 27

15 U.S.C. § 1711 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

15 U.S.C. § 1711(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

15 U.S.C. § 1719 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1337 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1367. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 28, 30

28 U.S.C. § 1367(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30

28 U.S.C. § 1367(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Mich. Comp. Laws § 559.101 et. seq. . . . . . . . . . . . . . . . . . . . . . . . . 3

Mich. Comp. Laws § 559.158 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Mich. Comp. Laws § 559.184 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Mich. Comp. Laws § 559.184(4)(a) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Mich. Comp. Laws § 559.184(4)(e) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Mich. Comp. Laws § 559.184a . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Mich. Comp. Laws § 559.184a(d)(i) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Mich. Comp. Laws § 559.215 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**Rules**

Fed. R. App. P. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Other Authorities**

24 C.F.R. § 1710.209(f)(3)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATEMENT IN SUPPORT OF REQUEST FOR ORAL ARGUMENT

Oral argument in this matter is appropriate because Plaintiffs-Appellants' appeal presents significant questions of law regarding the Interstate Land Sales Full Disclosure Act. Given the complexity of the legal issues in this case, an oral presentation would assist the Court in developing the understanding necessary to render a decision in this matter.

## JURISDICTIONAL STATEMENT

The lower court had subject matter jurisdiction in this case over the federal Interstate Land Sales Full Disclosure Act claim pursuant to 15 U.S.C. §1719 and pursuant to 28 U.S.C. §§ 1331 and 1337, which grant the federal district courts jurisdiction over matters of federal question and matters related to commerce, respectively. The lower court also had supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

The trial court issued its Opinion (R.E. No. 54, Opinion) and its Order (R.E. No. 55, Order) on May 17, 2010. The Order was a final order of the lower court and terminated the case in the lower court. Plaintiffs-Appellants filed a timely Notice of Appeal on June 14, 2010 (R.E. No. 56, Notice of Appeal). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and Fed. R. App. P. 3 and 4.

1

## STATEMENT OF ISSUES

I.    WHETHER THE DISTRICT COURT ERRED IN DISMISSING THE VENEKLASES' CLAIMS FOR RELIEF UNDER THE INTERSTATE LAND SALES FULL DISCLOSURE ACT.

II.    WHETHER THE DISTRICT COURT ERRED IN FAILING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS WHEN ISSUES OF FEDERAL QUESTION STILL REMAINED IN THE DISTRICT COURT.

III.    WHETHER THE DISTRICT COURT COMMITTED ERROR BY AWARDING BRIDGEWATER THE VENEKLASES' CASH DEPOSIT ON THE PURCHASE AGREEMENT.

## STATEMENT OF THE CASE

This appeal results from the district court's improper dismissal of Plaintiffs-Appellants Stephen and Rebecca Veneklase's (the "Veneklases") claim for relief under federal the Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. §1701, *et. seq.*, and the resultant dismissal, without prejudice, of the parties' remaining state law claims.

On April 1, 2009, the Veneklases filed a Complaint against Defendant-Appellee Bridgewater Condos, LC ("Bridgewater") seeking rescission of a purchase agreement and damages under ILSFDA (Count I) and under Michigan's Condominium Act ("Condo Act"), Mich. Comp. Laws § 559.101, *et. seq.* (Count II) (R.E. No. 1, Complaint). On May 11, 2009, Bridgewater filed its Answer to the Veneklases' Complaint together with a Counterclaim seeking Specific Performance (Count I of Counterclaim) and Breach of Contract (Count II of Counterclaim) (R.E. No. 4, Answer and Counterclaim).

On October 8, 2009, the Veneklases filed a Motion for Summary Judgment, pursuant to Fed.R.Civ.P. 56, seeking summary judgment of their rescission claims under both the ILSFDA and the Condo Act. (R.E. No. 28, Motion for Summary Judgment ("Motion")). The Veneklases also sought summary judgment of Bridgewater's counterclaims. (R.E. No. 28, Motion). On November 5, 2009,

3

Bridgewater filed a response in opposition to the Veneklases' Motion and asked that summary judgment be granted instead in Bridgewater's favor on the Veneklases' rescission claims. (R.E. No. 32, Defendant's Brief in Response to Plaintiffs' Motion for Summary Judgement ("Brief in Opposition")). The trial court heard oral argument from the parties on December 2, 2009, and took the matter under advisement.

Subsequently, on or about January 29, 2010, Bridgewater sold the condominium unit that was the subject of the parties' purchase agreement (as well as the subject of Bridgewater's claim for Specific Performance) to an unrelated third-party. (R.E. No. 43-1, Warranty Deed, Exhibit 1 to Veneklases' First Supplemental Brief in Support of Motion). Accordingly, on March 8, 2010, the Veneklases requested and were eventually granted leave to file a supplemental brief in support of their Motion asserting, yet again, that they should be granted summary judgment of Bridgewater's specific performance claim because Bridgewater no longer owned the subject condominium unit. (R.E. No. 43, First Supplemental Brief in Support of Motion). On March 19, 2010, Bridgewater responded and consented to the dismissal of its specific performance claim. (R.E. No. 45, Defendant's Response to First Supplemental Brief in Support of Motion). On April 12, 2010, the trial court granted the Veneklases' Motion as to Bridgewater's counterclaim for specific performance. (R.E. No. 50, Order Granting in Part Veneklases' Motion Re: Specific Performance).

4

Also on April 12, 2010, the Veneklases requested and were granted leave to file a second supplemental brief in support of their Motion regarding a recently published case addressing the right of equitable rescission of purchase agreements under Section 1709 of ILSFDA. (R.E. No. 51, Second Supplemental Brief in Support of Motion). That same day, the trial court also conducted a continued oral argument regarding the Veneklases' Motion and, once again, took the remaining claims under advisement.

On May 17, 2010, the trial court issued its Opinion and Order in this case in which it: 1) denied the Veneklases' Motion with regard to their rescission claim under ILSFDA; 2) granted Bridgewater's "motion for summary judgment" insofar as Bridgewater was awarded the Veneklases' cash deposit on the purchase agreement; 3) granted (again) summary judgment in favor of the Veneklases on Bridgewater's specific performance counterclaim; and 4) dismissed the remaining state law claims without prejudice. (R.E. No. 54, Opinion and No. 55, Order).

The ruling of the district court erroneously denies the Veneklases' right to establish equitable rescission under ILSFDA, and it completely ignores their request for monetary damages by dismissing the ILSFDA claim in its entirety without ever adjudicating or addressing the damages issue. In addition, since the ILSFDA claim was erroneously dismissed, so too were the state law claims because the district court

5

retained supplemental jurisdiction over such state law claims. Finally, the district court improperly awarded Bridgewater the Veneklases' cash deposit under the purchase agreement when the Veneklases' rescission claim under state law and Bridgewater's breach of contract claim under state law had not been adjudicated.

Accordingly, the Veneklases respectfully request that this Honorable Court reverse the trial court's decision regarding rescission of the purchase agreement and/or remand the case for further proceedings regarding issues of equitable rescission, damages, and the state law claims.

## **STATEMENT OF FACTS**

This case arises from the development of a condominium project located in Grand Rapids, Michigan, known as River House at Bridgewater Place (the "Project"), and the developer, Bridgewater's, failure to comply with ILSFDA, as well as its failure to comply with the Condo Act, in connection with its development and sale of units within the Project. (R.E. No. 29, Veneklases' Brief in Support of Motion ("Summary Judgment Brief"), p1).

On March 27, 2006, Bridgewater established the Project by recording the Master Deed for the Project in the office of the Kent County Register of Deeds as Document No. 20060327-0033964. (R.E. No. 29, Summary Judgment Brief, p. 2). Both prior and subsequent to the establishment of the Project, Bridgewater advertised,

offered for sale and sold units within the Project. (R.E. No. 29-1, Website Advertisement, Exhibit 1 to Summary Judgment Brief). In connection therewith, Bridgewater made use of instruments of interstate commerce, communications in interstate commerce, and/or of the mails, including but not limited to the use of the internet. (R.E. No. 29, Summary Judgment Brief, p.2). Bridgewater, however, admittedly did not register the Project with the Department of Housing and Urban Development ("HUD") or file a Statement of Record with HUD, as required by ILSFDA (R.E. No. 29-2, HUD Correspondence, Exhibit 2 to Summary Judgment Brief). [1]

On or about April 18, 2006, the Veneklases entered into a purchase agreement ("Purchase Agreement") (R.E. No. 29-3, Purchase Agreement, Exhibit 3 to Summary Judgment Brief) with Bridgewater, for the purchase of a residential condominium unit in the Project, Unit 79 (the "Unit"). The base purchase price for the Unit was $395,900. (R.E. No. 29-3, Purchase Agreement). At the time the Purchase Agreement was executed, the Veneklases made a cash down payment to Bridgewater in the amount of $9,877.00 and executed a promissory note (the "Note") in favor of

---

[1] R.E. No. 29-2 is a correspondence from the Department of Housing and Urban Development which confirms that neither Bridgewater nor the Project are registered with HUD, as well as a printout from a search performed for "Bridgewater" and "River House" on HUD's Interstate Land Sales link.

Bridgewater in the amount of $19,795.00. (R.E. No. 29-4, Note, Exhibit 4 to Summary Judgment Brief). In addition, the Veneklases had previously made a cash deposit to Bridgewater in the amount of $2,000, in connection with the execution of a reservation agreement prior to their execution of the Purchase Agreement. (R.E. No. 29-3, Purchase Agreement). The total amount of the Veneklases' deposits on the Unit, including the Note, is $31,672.00 (collectively, the "Deposit"). (R.E. No. 29-3, Purchase Agreement). These facts and numbers are undisputed.

Prior to (and following) the execution of the Purchase Agreement, Bridgewater failed to provide the Veneklases with a printed property report meeting the requirements of ILSFDA. (R.E. No. 29-5, Affidavit of Steven Veneklase ("Affidavit"), ¶5, Exhibit 5 to Summary Judgment Brief). In addition, the Purchase Agreement failed to contain any language which notified the Veneklases that in the event Bridgewater failed to furnish a property report in advance of their execution of the Purchase Agreement, the Veneklases had the right to revoke the Purchase Agreement within two years from the date of such signing, as required by §1703(c) of ILSFDA. (R.E. No. 29-3, Purchase Agreement).

Bridgewater also failed to include in the Purchase Agreement an express statement that the escrow agreement between Bridgewater and Bridgewater's escrow agent was incorporated into the Purchase Agreement by reference, as required by §

8

84(4)(e) of the Condo Act, Mich. Comp. Laws §559.184(4)(e). (R.E. No. 29-3, Purchase Agreement). Bridgewater likewise failed to include the address of its escrow agent within the statement contained in the Purchase Agreement that all funds paid by the Veneklases in connection with the purchase of the Unit shall be deposited in an escrow account with an escrow agent and shall be returned to the Veneklases within three (3) business days after withdrawal from the Purchase Agreement, which failure is a violation of § 84(4)(a) of the Condo Act, Mich. Comp. Laws § 559.184(4)(a). (R.E. No. 29-3, Purchase Agreement). Furthermore, Bridgewater failed to include in the Disclosure Statement - - a document required to be given to the Veneklases pursuant to § 84a of the Condo Act - - a **current and accurate** explanation of the association of co-owners' possible liability pursuant to § 58 of the Condo Act, as required by § 84a(d)(i) of the Condo Act, Mich. Comp. Laws §559.184a(d)(i). (R.E. No. 29-11, Disclosure Statement, Exhibit 11 to Summary Judgment Brief).

After more than two (2) years had passed since the Veneklases had signed the Purchase Agreement, and with no idea of when their Unit would finally be constructed, Steve Veneklase contacted Chuck Gallagher, an agent of Bridgewater, in or about the Summer/Fall of 2008 and spoke to him at length, informing Mr. Gallagher that because of Bridgewater's significant delay in the construction of the

9

Unit the Veneklases could no longer obtain financing and would not be able to close on the Unit. (R.E. No. 29-5, Affidavit, ¶6). In addition, in January or February 2009, Mr. Veneklase was contacted by Lisa Spaugh, a real estate broker for River House Realty, an agent of Bridgewater, regarding closing preparations. At the time of this contact, Mr. Veneklase informed Ms. Spaugh that they would not be able to close on the Unit. (R.E. No. 29-5, Affidavit, ¶7). The Veneklases listed the Unit for sale at their own cost.

It was not until February 24, 2009 - - nearly three (3) years after they signed the Purchase Agreement - - that the Veneklases were notified that the construction on the Unit was finally complete and that a closing had been scheduled for March 19, 2009. (R.E. No. 29-5, Affidavit, ¶8). On March 17, 2009, the Veneklases sent Bridgewater a correspondence apprising Bridgewater of its violations of ILSFDA and notifying Bridgewater that as a result of such violations, they were no longer able to obtain financing to purchase the Unit. (R.E. No. 29-6, March 17, 2009 Correspondence, Exhibit 6 to Summary Judgment Brief). In that correspondence, the Veneklases also informed Bridgewater that they did not intend to close on the purchase of the Unit and instead, requested a rescission of their Purchase Agreement and related Note and a return of all deposits they made on the Unit. (R.E. No. 29-6, March 17, 2009 Correspondence). Furthermore, in a letter dated March 24, 2009, the

10

Veneklases provided Bridgewater notice of exercise of their rescission rights under paragraph 10 of the Purchase Agreement, as a result of Bridgewater's failure to provide the Veneklases with all documents, in proper form, as required by the Condo Act and, again, requested the return of their Deposit. (R.E. No. 29-7, March 24, 2009 Correspondence, Exhibit 7 to Summary Judgment Brief).

On April 1, 2009, after not having received a response from Bridgewater, the Veneklases commenced the current litigation in the district court. (R.E. No. 1, Complaint). On October 8, 2009, the Veneklases sought summary judgment of their rescission claims under both the ILSFDA and the Condo Act, as well as summary judgment of Bridgewater's counterclaims. (R.E. No. 29, Summary Judgment Brief). Bridgewater opposed the Veneklases' Motion and asked instead that summary judgment be granted in Bridgewater's favor on the Veneklases' claims. (R.E. No. 32, Brief in Opposition). On May 17, 2010, the trial court issued its Order dismissing the Veneklases' ILSFDA claim, as well as dismissing the remaining state law claims, without prejudice. (R.E. No. 55, Order). The trial court never reached the merits on the Veneklases' request for damages under ILSFDA or on the parties' remaining state law claims. (R.E. No. 55, Order). The Veneklases then timely filed this appeal. (R.E. No. 56, Notice of Appeal).

11

## SUMMARY OF ARGUMENT

The trial court erred by dismissing the Veneklases' ILSFDA claim for three (3) reasons: 1) the trial court improperly adopted the analysis in *Taylor v. Holiday Isle, LLC*, 561 F.Supp.2d 1269 (S.D.Ala., 2008), which effectively holds a developer harmless for its violation of the ILSFDA by failing to provide the requisite notice of rescission rights under §1703(c), as opposed to adopting the analysis in *Jankus v. The Edge Investors, L.P.*, 619 F.Supp.2d 1328 (S.D.Fla April 8, 2009) (superceded on other grounds), which more closely effectuates the purpose of ILSFDA, which is to protect purchasers from unscrupulous sales of undeveloped home sites; 2) the trial court improperly disregarded the ruling in *Plant v. Merrifield Town Center Ltd. Partnership*, - - - F.R.D. - - -, 2010 WL 1039875 (E.D. Va, March 18, 2010) (R.E. No. 51-1, *Plant* case, Exhibit 1 to Veneklases' Second Supplemental Brief in Support of Summary Judgment), which differentiated between the *automatic* revocation right under §1703(c) of ILSFDA and the right of *equitable* rescission under §§ 1709(a) and (b) of ILSFDA, and dismissed the Veneklases' right to seek equitable rescission, despite the existence of genuine issues of material fact; and 3) the trial court committed error by dismissing the ILSFDA claim in its entirety, based solely on its denial of the Veneklases' request for rescission, and failing to address the Veneklases' request for damages under §1709(b) of ILSFDA.

In addition, because genuine issues of material fact still remain with regard to the Veneklases' federal claim, such as damages and/or equitable rescission, and such claim was improperly dismissed, it follows that the Veneklases' state law claim was also improperly dismissed, because the trial court maintained supplemental jurisdiction over such claim.

Finally, the trial court erred by awarding Bridgewater the Veneklases' cash deposit on the Purchase Agreement. The trial court stated in its Opinion that "Defendant/Counter-Plaintiff's motion for summary judgment is granted insofar as Bridgewater Condos, L.C. is awarded the Veneklases' cash deposit." (R.E. No. 54, Opinion, p. 9). The problems with this ruling are two-fold: 1) the trial court dismissed Bridgewater's state law breach of contract claim, and thus, cannot make a partial ruling on this claim if it is dismissing the claim; and 2) if it is determined that the state law claims were properly dismissed, then the Veneklases' rescission claim under the Condo Act may still be adjudicated in the state court and determined a proper remedy, in which case, Bridgewater would not be entitled to the Veneklases' Deposit.

## STANDARD OF REVIEW

The standard of review of a district court's decision to grant or deny summary judgment is *de novo* review. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.*, quoting Fed.R.Civ.P. 56(c). In addition, statutory interpretation is a question of law that is reviewed *de novo*. *Koenig Sporting Goods, Inc. v Morse Road Company (In Re Koenig Sporting Goods, Inc)*, 203 F.3d 986, 988 (6th Cir. 2000).

A district court's decision whether to exercise supplemental jurisdiction is reviewed for abuse of discretion. *Soliday v. Miami County*, 55 F.3d 1158, 1164 (6th Cir. 1995). Abuse of discretion is defined as "a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* at 1164-1165, quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989).

14

## ARGUMENT

I. **THE DISTRICT COURT ERRED IN DISMISSING THE VENEKLASES' CLAIM FOR RELIEF UNDER ILSFDA.**

A. The District Court's Interpretation Of ILSFDA, Concerning The Right To Rescission Under §1703(c) Thereof, Is In Contravention To The Intent Of Congress.

The ILSFDA is an anti-fraud statute **designed for consumer protection** by "utilizing disclosure as its primary tool" to "protect purchasers from unscrupulous sales of undeveloped home sites." *Winter v. Hollingsworth Properties, Inc.*, 777 F.2d 1444, 1447-48 (11th Cir. 1985). The ILSFDA is a strict liability statute which was **enacted for the purpose of protecting the public** and as such, courts have determined that the ILSFDA should be **liberally construed in favor of the public**. *200 East Partners LLC v. Gold*, 997 So.2d 466 (Fla. 4th DCA 2008).

§1703(a)(1) of ILSFDA makes it unlawful "for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails" to sell any "lot not exempt under §1702" unless the developer complies with the provisions of ILSFDA, including providing a "property report" to the purchaser before he or she signs any contract or agreement for purchase of the lot. 15 U.S.C. § 1703(a)(1). In the event the required property report is not furnished to the purchaser before signing the purchase

15

agreement, ILSFDA gives the purchaser the right to revoke the purchase agreement within two years of signing. 15 U.S.C. § 1703(c). ILSFDA **requires that the developer provide clear notice of this revocation right in the purchase agreement**. *Id.* If a purchaser exercises his or her right to revoke the purchase agreement under §1703(c), the purchaser is "entitled to all money paid by him or her under such contract or agreement." 15 U.S.C. § 1703(e).

There is no dispute that Bridgewater failed to provide the Veneklases with the requisite property report. (R.E. No. 29-5, Affidavit, ¶5). In addition, there is no dispute that Bridgewater failed to include any language in the Purchase Agreement notifying the Veneklases of their revocation rights under §1703(c) of ILSFDA (nor did Bridgewater include in the Purchase Agreement the language mandated by the Code of Federal Regulations).[2] (R.E. No. 29-3, Purchase Agreement). Had Bridgewater notified the Veneklases of this right, as it was required to do under

---

[2] In addition to ILSFDA, the Code of Federal Regulations requires the developer to include the following language in boldface type on the face or signature page of the purchase agreement:

"If you did not receive a Property Report prepared pursuant to the rules and regulations of the Office of Interstate Land Sales Registration, U.S. Department of Housing and Urban Development, in advance of your signing the contract or agreement, the contract or agreement of sale may be cancelled at your option for two years from the date of signing." 24 C.F.R. § 1710.209(f)(3)(i).

16

ILSFDA, the Veneklases would have exercised their rescission rights within the 2-year period following the execution of the Purchase Agreement.

There have been two different bodies of thought and analyses of this 2-year rescission issue under §1703(c) of ILSFDA in the federal courts (and state courts). In *Taylor v. Holiday Isle, LLC*, 561 F.Supp.2d 1269, 1273 (S.D.Ala.2008), the first published opinion on this issue, the court held that a rescission claim under §1703(c) requires compliance with both §1703(c)'s two-year window for invoking the buyer's rights of rescission and §1711(b)'s three year statute of limitations for filing suit based on a seller's refusal to honor the rescission demand, regardless of whether the contract contained the statutorily mandated notice of rescission rights.

The *Taylor* approach was subsequently analyzed and rejected by the United States District Court for the Southern District of Florida in *Jankus v. The Edge Investors, L.P.*, 619 F.Supp.2d 1328 (S.D.Fla April 8, 2009). Instead, the *Jankus* court held that a developer's failure to give the notice of rescission rights mandated by §1703 of ILSFDA **extends** the purchaser's rescission period **until two years after the disclosure is correctly made**. The *Jankus* Court stated as follows:

> "The two year rescission window created by §1703(c) does not, by its terms, prescribe the date by which suit must be filed, and hence it is not, by its terms, a statute of limitations. A statute of limitation operates, with the lapse of time, to extinguish the right which is the foundation for the claim, and typically provides that a cause of action may or must be

17

filed within a certain period of time. [Citations omitted]. The preliminary rescission notice requirement described at §1703(c) does not fall into this category; rather it is more accurately characterized as a condition precedent to suit that may be waived by the seller.

\* \* \*

Moreover, that the plaintiff may have a theoretical action for damages under §1709(b) is not a meaningful alternative where he or she is still bound to perform under the contract of purchase. Without the legislatively prescribed rescission remedy under §1703(c), he or she is left with the difficult task of proving the materiality of the property report disclosure violation and causally related damages under §1709(b). The corresponding diminished litigation exposure attendant to this revision of the statutory scheme would give developers little incentive to comply with the disclosure requirements mandated under the ILSA. **This court is not willing to interfere with the ILSA statutory scheme in this fashion by effectively writing the rescission disclosure requirement out of the statute, essentially what the *Holiday Isle* court achieved by enforcing §1703(c)'s two year rescission period against a buyer who did not receive the statutorily prescribed notice of it.**" *Id.* at 1336-1337 (emphasis added).

Based on the above analysis, the *Jankus* Court held that a developer's failure to give the statutorily mandated notice of rescission rights under §1703(c) of ILSFDA extends the rescission period until two (2) years after the disclosure is correctly made. *Id.* at 1337-1338. "Where, as here, the required property report disclosure is never made, **the buyer's rescission period runs the full length of the three year statute of limitations** prescribed at 15 U.S.C. §1711(b)." *Id.* at 1338 (Emphasis added).[3]

---

[3] On August 31, 2009, the *Jankus* opinion was superceded on other grounds. On the defendant's motion for reconsideration, the court determined that the

18

In the current case, the district court reviewed both the *Taylor* and *Jankus* decisions and determined that *Taylor* was more persuasive because *Jankus* "utilized §1711 to effectively excise the time limitations imposed by §1703 from the ILSA." (R.E. No. 54, Opinion, p.5). The court further found that *Taylor* reads §1703 in conjunction with §1711 and harmonizes the two provisions.[4] (R.E. No. 54, Opinion, p.5). In reaching its decision, the court pointed out that, "The Court has found no Sixth Circuit authority on point. As such, the Court will endeavor to interpret the statutes in a manner consistent with Congressional intent." (R.E. No. 54, Opinion, p.5). In this case, however, the Court did just the opposite and *ignored* the intent of Congress.

As stated above, ILSFDA was designed for consumer protection and enacted

---

purchase agreement contained language sufficient to meet the §1702(a)(2) exemption regarding a developer's obligation to construct the condominium unit within 2 years and that, accordingly, the purchase agreement was exempt from the requirements of ILSFDA. As such, the Court did not need to render a decision on the rescission issue. 650 F.Supp.2d 1248 (S.D.Fla. 2009).

[4] Both the *Taylor* and *Jankus* decisions were also recently examined by the court in *Plaza Court, LP v Baker-Chaput*, 17 So.3d 720, (2009). Contrary to the current case, the *Plaza Court* court properly concluded that the *Jankus* analysis "is superior to the view taken by the *Taylor* court" because the *Taylor* decision effectively holds the developer harmless for failing to provide the required notice. *Id.* at 728. The *Plaza Court* court rejected the *Taylor* approach and adopted the reasoning of *Jankus*, holding that the time limit for purchasers to exercise the right of rescission due to developer's failure to provide a property report did not begin to run until developer gave purchaser notice of the right to rescind.

for the purpose of safeguarding the public. *See Winter, supra* at 1447-48; *200 East Partners LLC, supra.* The *Jankus* analysis is the one that more closely effectuates Congressional intent and the purpose of ILSFDA, which is to protect purchasers from unscrupulous sales of undeveloped home sites. *Winter, supra* at 1447. *Jankus* recognized that the rescission disclosure requirement would be essentially written out of ILSFDA if courts were to enforce §1703(c)'s two-year rescission period against a purchaser who did not receive the statutorily prescribed notice of its rescission rights. Whereas, the view taken by the *Taylor* court, and the one adopted herein by the district court, essentially **holds the developer harmless** for its failure to provide the proper notice mandated by ILSFDA. The *Taylor* approach punishes the innocent purchaser for the developer's statutory violations. This is in complete contravention to the Congressional intent, which is to **protect**, not punish, the purchaser.

Accordingly, the district court's interpretation of the provisions of ILSFDA is improper because it reads out the requirement of the developer to provide notice to the purchaser of its right to rescind the purchase agreement and because it is inconsistent with the intent and purpose of ILSFDA. The Veneklases respectfully request that this Court reverse the decision of the district court, apply the analysis of *Jankus* to the current action, and grant the Veneklases rescission of the Purchase Agreement under §1703(c) of ILSFDA.

20

B.  <u>The District Court Improperly Dismissed The Veneklases' Right To Seek Equitable Rescission Under §§ 1709(a) And (b) Of ILSFDA, Despite The Existence Of A Genuine Issue Of Material Fact.</u>

On March 18, 2010, the United States District Court for the Eastern District of Virginia issued an opinion in *Plant v. Merrifield Town Center Limited Partnership*, --- F.R.D. - - -, 2010 WL 1039875 (E.D. Va, March 18, 2010) (R.E. No. 51-1, *Plant* case, Exhibit 1 to Veneklases' Second Supplemental Brief in Support of Summary Judgment), in which it specifically differentiated between the *automatic* rescission right under §1703(c) of ILSFDA and the right of *equitable* rescission under §§ 1709(a) and (b) of ILSFDA.

§1709(a) states, in relevant part:

> "A purchaser or lessee may bring an action at law or in equity against a developer or agent if the sale or lease was made in violation of section 1703(a). In a suit authorized by this subsection, the court may order damages, specific performance, **or such other relief as the court deems fair, just, and equitable**." (Emphasis added).

§1709(b) states, in relevant part:

> "A purchaser or lessee may bring an action at law **or in equity** against the seller or lessor (or successor thereof) to enforce any right under subsection (b), (c), (d), or (e) of section 1703." (Emphasis added).

In *Plant*, the court addressed the parties' objections to the magistrate judge's September 29, 2009 report and recommendation concerning the parties' evidentiary burdens on liability and affirmative defenses. In that report, the magistrate judge had

concluded that the **plaintiffs may seek rescission of their purchase agreements under 15 U.S.C. §1709(a) or (b)** of ILSFDA. Specifically, the magistrate judge found that rescission is available as a remedy under §1709(a) because this provision gives the district court the power to award all "fair, just, and equitable" relief. Similarly, §1709(b) allows an equitable action to enforce "any right" under §1703, and as such, the magistrate judge concluded that plaintiffs are entitled to rescission of their purchase agreement so long as they show that the defendant's violation of §1703(c) (i.e. the failure to provide the plaintiffs with notice of the automatic revocation right) was a substantial violation that prejudiced the plaintiffs.

In addressing whether equitable rescission is an available remedy under §§ 1709(a) and (b) of ILSFDA - - a matter of first impression - - the *Plant* court examined similar provisions in the Securities Act of 1933 and ERISA, which the Supreme Court had previously construed as creating entitlement to equitable rescission where the appropriate circumstances existed. Based on this analysis, the *Plant* court concluded that:

> "There is no basis to conclude that the ILSFDA provisions creating 'an action at low or in equity' should be interpreted any differently from the provisions of ERISA and the Securities Act. Indeed, the broad language of §§ 1709(a) and (b) indicates that **all equitable remedies** 'typically available' under the common law are available for qualifying ILSFDA violations. Because it is beyond dispute that rescission is such a

22

typically available remedy, *see* 3 Pomeroy's Equity Jurisprudence § 891 (5th ed. 1941), **it is clear that rescission is available if the required elements are established**." *Id.* at *10 (citations omitted)(emphasis added).

The *Plant* court then established the standard for proving entitlement to equitable rescission under §1709 of ILSFDA, stating that the plaintiffs must prove:

> "(i) that ILSFDA violations occurred, (ii) that these violations were material or, in other words, that they would have influenced a reasonable purchaser's decision to enter into the contract for sale, and (iii) either that rescission would restore the parties to the *status quo ante*, or that the equities of the situation demand rescission." *Id.*

Furthermore, the court concluded that, despite the magistrate judge's conclusion, actual prejudice is not required to establish a claim for equitable rescission; rather, under federal common law, rescission is available under §1709 of ILSFDA if the plaintiffs can prove objective materiality. *Id.* at *12.

In the present case, the district court declined to rely on the *Plant* case, finding that the reasoning in *Plant* reads §1703 out of ILSFDA. (R.E. No. 54, Opinion, p.6). The district court's conclusion is erroneous. *Plant* was, in fact, able to harmonize §1709 and §1703 by noting the difference between the rescission rights in both provisions. §1703 provides for an **automatic** right of rescission if the purchaser notifies the developer of its decision to rescind within 2 years from the signing of the purchase agreement. Under this section, the purchaser is automatically entitled to rescission of the purchase agreement with no questions asked. Whereas, under

23

§1709, the purchaser has to **prove** that it is entitled to **equitable** rescission. The purchaser does not automatically get rescission as it does under §1703; instead, the purchaser must show a material violation of ILSFDA that prejudiced the purchaser and would entitle the purchaser to an equitable remedy.

In a case such as the present one, where the purchasers missed the 2-year deadline for automatic rescission under §1703 **as a result of the developer's violation of ILSFDA**, the purchasers should be given an opportunity to prove that they are entitled to *equitable* rescission under §1709. In no way does this remedy read §1703(c) out of the statute; rather, it permits the purchaser a chance to establish to the court that it is entitled to equitable relief. Again, it is important to remember that the purpose of ILSFDA is to **protect the purchaser**. §1709 specifically effectuates this purpose by providing that the purchaser is entitled to any such relief that the court deems equitable. There is no doubt that rescission is equitable relief. §1709 does **not** say that a purchaser is entitled to all equitable relief, **except** rescission, as this district court's ruling would suggest.[5] If Congress wanted to exclude rescission as an available equitable remedy under §1709 it could have simply stated so, but it did not. Accordingly, it must be assumed that Congress intended for

---

[5] The district court's approach is the one that reads language out of the statute by not providing for all available methods of equitable relief under §1709.

24

equitable rescission as an available remedy to purchasers under §1709, and that §1703 and §1709 can be read together in harmony. *See Engine Manufacturers Association v. South Coast Air Quality Management District*, 541 U.S. 246, 252 (2004)("'Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'")(citations omitted); *Negonsott v. Samuels*, 507 U.S. 99, 104 (1993) ("'Our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive.'")(citations omitted).

Accordingly, the district court committed error in dismissing the Veneklases' rescission claim under ILSFDA, and not permitting them to make a showing for equitable rescission, when a genuine issue of material fact exists as to whether they were entitled to equitable rescission under the circumstances. The Veneklases respectfully request that this Court reverse the decision of the district court, apply the analysis of *Plant* to the current action, and remand the case back to district court for a finding on the issue of equitable rescission.

C. The District Court Committed Error By Improperly Dismissing The Veneklases' Claim For Relief Under ILSFDA, In Its Entirety, Without Ever Adjudicating Or Addressing The Veneklases' Request For Damages Under §1709(b) Of ILSFDA.

There is no dispute that the Veneklases sought damages in their Complaint for Bridgewater's violations of ILSFDA. (R.E. No. 1, Complaint, ¶21). As stated above, §1709 of ILSFDA, in addition to providing for equitable relief, also permits the purchaser to seek damages. When the Veneklases sought summary judgment, they argued that they were entitled to *rescission* under both acts - - the issue of *damages* was never briefed. (R.E. No. 29, Summary Judgment Brief). Likewise, when Bridgewater filed its Brief in Opposition, it also asked that summary judgment of the Veneklases' rescission claims be granted in its favor; specifically asking the court to "declare that rescission is not available as a matter of law and Plaintiffs' counts under the ILSFDA and Michigan Condo Act seeking rescission be dismissed." (R.E. No.32, Brief in Opposition, p.25).

The Veneklases replied that, even if the Court determined that they were not entitled to rescission of the Purchase Agreement, they were, nonetheless, entitled to seek **damages** as alternative relief under ILSFDA, which precluded dismissal of their ILSFDA claim by summary judgment. (R.E. No. 33, Veneklases' Reply to Bridgewater's Brief in Opposition, pp.8-9). In fact, on page 5 of Bridgewater's Brief

26

in Opposition, it admits, "There is a three-year period of limitations for actions for damages under the ILSLA **so buyers are still provided protections**." (Emphasis added). (R.E. No. 32, Brief in Opposition, p.5). Moreover, the very case that was relied upon by the district court in reaching its decision on the issue of rescission under §1703, *Taylor v. Holiday Isle, LLC*, specifically provides that, "§1709(b) would **plainly allow a purchaser to bring a claim for damages** based on a seller's failure to provide the statutorily required notice of rescission." *Taylor, supra* at 1276 (emphasis added).

§1709(b) of ILSFDA clearly and unambiguously provides the Veneklases with the right to seek damages for Bridgewater's violations of the Act. There is no dispute that the Veneklases brought their claim for damages within the three-year statute of limitations. (R.E. No. 1, Complaint). As such, the Veneklases stated a viable claim and they are entitled to present their claim for damages at trial. The district court, however, dismissed the Veneklases' ILSFDA claim, in its entirety, based solely on its denial of rescission, without so much as even mentioning their request for damages. (R.E. No. 54, Opinion and No. 55, Order). This was improper. There is nothing in the record to show that there was no genuine issue as to any material fact regarding the issue of damages that would entitle Bridgewater to summary judgment of the Veneklases' damage claim. In fact, it is unclear as to whether the district court

27

even purported to grant summary judgment on the issue of damages because this issue was **never even addressed by the court**.

Clearly, the district court erred in dismissing the entire federal claim without adjudicating the merits of the Veneklases' request for damages under ILSFDA. Accordingly, the Veneklases request that this Court remand the case back to district court for further proceedings on the issue of damages.

## II. THE DISTRICT COURT ERRED IN FAILING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS WHEN ISSUES OF FEDERAL QUESTION STILL REMAINED IN THE DISTRICT COURT.

A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. §1367. Subsection (a) of this provision provides, in relevant part, that:

> "In any civil action of which the district courts have original jurisdiction, the district courts **shall** have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a) (emphasis added).

28 U.S.C. §1367(c) provides in pertinent part, however, that:

> "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed **all** claims over which it has original jurisdiction." (Emphasis added).

28

The federal courts have a strict duty to exercise the jurisdiction that has been conferred upon them by Congress. *Quackenbush v. Allstate Insurance Company*, 517 U.S. 706, 716 (1996).

As the district court noted in its opinion,

"If however, the federal claims are dismissed from the action the federal courts may retain jurisdiction over the state law claims and may choose to entertain those claims, dismiss them, or remand them back to the state court.

\*\*\*

The only claims remaining are Plaintiffs' state law claims under the Michigan Condominium Act and Defendant's state law breach of contract claims." (R.E. No. 54, Opinion, pp. 7-8).

Because the district court erroneously believed that only state law claims remained in this action, it exercised its discretion to dismiss the state law claims without prejudice.

The problem with the district court's ruling, however, is that not all of the federal claims had been dismissed - - - at least not *properly* dismissed. As explained above, the Veneklases are entitled to seek equitable rescission or damages under ILSFDA and the district court improperly dismissed the federal ILSFDA claim because genuine issues of material fact still existed as to these two issues. Because these federal claims were improperly dismissed, the district court continues to

29

maintain original jurisdiction thereof. *See* 28 U.S.C. § 1367; *Hunter v. Estee*, 363 Fed.Appx. 538, 540 (2010). Since the district court still has original jurisdiction over the ILSFDA claim, then, pursuant to 28 U.S.C. §1367(a), it must exercise supplemental jurisdiction over the remaining state law claims, which clearly "derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

The district court abused its discretion by failing to exercise supplemental jurisdiction over the remaining state law claims when issues of federal question were still properly within the district court's jurisdiction. Wherefore, the Veneklases respectfully request that this Court reverse the decision of the district court to dismiss the related state law claims from this case.

## III. THE DISTRICT COURT COMMITTED ERROR BY AWARDING BRIDGEWATER THE VENEKLASES' CASH DEPOSIT ON THE PURCHASE AGREEMENT.

A. The District Court May Not Both Rule On A State Law Claim And Dismiss The Same State Law Claim Concurrently.

In its Order, the district court stated that, "Defendant/Counter-Plaintiff's motion for summary judgment is granted insofar as Bridgewater Condos, L.C. is awarded the Veneklases' cash deposit; but Defendant/Counter-Plaintiff's motion for

summary judgment on its claim for specific performance (Dkt. 32) is denied and summary judgment is granted in favor of Plaintiffs/Counter-Defendants" (R.E. No. 55, Order). This ruling is confusing because, despite the court's assertion, Bridgewater had never filed a motion for summary judgment on any of its claims.[6] The court references "Dkt. 32" which is actually Bridgewater's Brief in Opposition to the Veneklases' motion for summary judgment. In that brief, Bridgewater simply asked that summary judgment be entered in its favor on the *Veneklases'* rescission claims, specifically asking for a ruling that rescission is not available to Veneklases -- Bridgewater made no mention of damages or that it was seeking summary judgment of its breach of contract or specific performance claims. (R.E. No. 32, Brief in Opposition).

It can be assumed that in the district court's confusion, it purported to rule on Bridgewater's non-existent "motion for summary judgment" of its breach of contract

---

[6] What is even more confusing is that one month prior to its May 17 Order, the district court had already ruled on the *Veneklases'* motion for summary judgment with regard to Bridgewater's specific performance counterclaim and granted summary judgment in favor of the Veneklases. (R.E.No. 50, Order granting summary judgment in favor of Veneklases on Bridgewater's Specific Performance Counterclaim). Thus, it is difficult to understand why the court then purported to "deny" Bridgewater's "motion for summary judgment on its specific performance" claim when no such motion had ever been made by Bridgewater, and the specific performance issue had already been previously adjudicated.

31

claim by awarding Bridgewater the Veneklases' cash deposit, as that is the only claim in which Bridgewater sought damages. Yet, as the court recognized in its Opinion, "The only claims remaining are Plaintiffs' state law claims under the Michigan Condominium Act and **Defendant's state law breach of contract claims**."[7] (emphasis added) (R.E. No. 54, Opinion, p.8). The court went on to dismiss all of the remaining state law claims, without prejudice, including Bridgewater's breach of contract claim.

As the district court noted several times in its Opinion, when all of the federal claims are dismissed, the court has three opinions for how to handle the remaining pendent state law claims. The federal court may: 1) retain jurisdiction over the state law claims and entertain those claims; 2) remand the claims to state court; **or** 3) dismiss the claims without prejudice. *See United Mine Workers, supra,* 383 U.S. 715; *May v. Franklin County Commissioners,* 437 F.3d 579 (6th Cir. 2006). It is clear that the court must choose only one of the above three options.

In the current case, however, the district court appears to have improperly both entertained Bridgewater's state law breach of contract claim **and** dismissed it at the same time. This was clear error on the part of the court. As the court obviously

---

[7] Bridgewater had already lost those claims in state court decisions in parallel cases.

intended for the state law claims to be dismissed without prejudice, it is not permitted to concurrently make a partial ruling on the merits of Bridgewater's breach of contract claim by awarding it the Veneklases' cash deposit. As such, the court's ruling regarding the grant of the cash deposit must be reversed.

B. The District Court Improperly Awarded Bridgewater the Veneklases' Cash Deposit Without An Adjudication Of The State Law Claims On Their Merits.

If this Appellate Court determines that the state law claims were properly dismissed without prejudice by the district court, then the Veneklases are entitled to re-file their claim for rescission under the Condo Act in state court and have such claim adjudicated on its merits. If the state court were to determine that rescission of the Purchase Agreement under the Condo Act is a proper remedy, then Bridgewater would not be entitled to the Veneklases' Deposit. Accordingly, the district court's award of the Deposit to Bridgewater was erroneous and premature.

As the district court mentioned in its Opinion (R.E. No. 54, Opinion, p.8), there were several similar cases filed in the Kent County Circuit Court in the State of Michigan involving Bridgewater and various other prospective purchasers of units in the Project seeking rescission of their respective purchase agreements due to Bridgewater's failure to comply with the Condo Act. It is important to note that **summary disposition has already been granted in favor of the intended**

33

**condominium purchasers** in at least fifteen (15) of those cases because **the state court ruled that Bridgewater failed to comply with the unambiguous language of the Condo Act**. At one of the summary disposition hearings in the state court proceedings, the state court judge stated:

> "The problem, it seems to me, is that the developer [Bridgewater], pursuant to section 559.184a(1)(b) [of the Condo Act], **did not provide to the prospective purchasers a copy of a purchase agreement that conforms with Section 84**." (emphasis added)(R.E. No. 29-13, Partial Transcript of Summary Disposition Hearing in Kent County Circuit Court ("Transcript"), p 17, Exhibit 13 to Summary Judgment Brief).
>
> ***
>
> "And the reason that it doesn't conform is because the purchase agreement did not 'include the name and address of the Escrow Agent,' and in a rather garbled way, if at all, had a statement that 'the Escrow Agreement between the Developer and the Escrow Agent was incorporated by reference.' The subsection (4)(a) uses the word 'shall' up in the catch line at the top under (4), and then it uses the word 'shall' again right before 'shall include the name and address of the Escrow Agent.' So it's a kind of a 'double shall,' and as I said, **I don't think there's really a whole lot of doubt as to what the law requires. And likewise, I don't think there's a whole lot of doubt but what the purchase agreement in the present case doesn't comply with the law**." (R.E. No. 29-13, Transcript, p 18) (emphasis added).
>
> ***
>
> "The statute is plain, straightforward, and unambiguous in its requirements, and there is no indication that, if you largely comply with it, or sort of comply with it, or provide other documents someplace that comply with it, that will pass muster. The statute, not requiring any interpretation or construction, has to be given its meaning as found on its face. Likewise, the standard rule of construction prohibits the Court from rendering nugatory or surplusage any language contained in it.

34

And in order to interpret the statute or apply the law as the developer would have us do in this case, the mandatory language of the statute would be obviated, which, it seems to me, this Court lacks the power to do." (R.E. No. 29-13, Transcript, p. 19).

The Kent County Circuit Court entered orders granting summary disposition in favor of the prospective purchasers in these state court cases, finding that the subject purchase agreements violated the Condo Act, specifically Mich. Comp. Laws §§559.184 and 559.184a, and are therefore, invalid and unenforceable. (R.E. No. 29-14, Order of Kent County Circuit Court, Exhibit 14 to Summary Judgment Brief). The state court also **awarded damages in favor of the purchasers,** as a matter of law, under Mich. Comp. Laws § 559.215, which states, in pertinent part, "A developer who offers or sells a condominium unit in violation of section 21 or 84a is liable to the person purchasing the condominium unit for damages." (R.E. No. 29-14, Order of Kent County Circuit Court).

Accordingly, it has already been determined by the state court that rescission of identical purchase agreements is an appropriate remedy in cases on-point with the current matter, because of Bridgewater's failure to comply with the Condo Act.[8] If the Veneklases were to re-file their state law claims in Kent County Circuit Court,

---

[8] It should be noted that Bridgewater filed and was granted leave to appeal the circuit court's decision by the Michigan Court of Appeals. Those appeals are currently pending.

they would receive the same outcome - the state court would grant summary disposition in their favor on the rescission and damages issues under the Condo Act. As such, Bridgewater would not be entitled to the Veneklases' cash Deposit (pending the outcome of the appeals). Therefore, it was improper and premature for the district court to award Bridgewater the Veneklases' cash Deposit prior to the adjudication of the state law claims, which would clearly result in a different outcome. The Veneklases respectfully request that this Court reverse the district court's ruling awarding the Veneklases' cash Deposit to Bridgewater.

## RELIEF REQUESTED

The Veneklases respectfully request the following relief: 1) reversal of the district court's ruling with regard to automatic rescission under §1703 of ILSFDA, or, in the alternative, remand of the case back to the lower court for further findings on the issues of equitable rescission and/or damages under §1709 of ILSFDA; 2) reversal of the lower court's ruling to dismiss the pendent state law claims; and 3) reversal of the lower court's ruling to award the Veneklases' cash Deposit to Bridgewater.

Respectfully submitted,

Dated: August 3, 2010

/s/ David W. Charron
David W. Charron (P39455)
Heidi L. Hohendorf (P68944)
Charron & Hanisch, PLC
4949 Plainfield Ave NE
Grand Rapids, MI 49525
Telephone: (616) 363-0300
Facsimile: (616) 363-0339
Email: dwcharron@charronhanisch.com
      hhohendorf@charronhanisch.com
Attorneys for Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation provided in Fed.R.App.P. 32(a)(7)(B). The foregoing brief contains 8,229 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

I further certify that the foregoing brief complies with the typeface requirements of Fed.R.App.P.32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6). This brief was prepared using Times New Roman (14 point) proportional type. The word processing software used to prepare this brief was WordPerfect 10.

Dated: August 3, 2010 /s/David W. Charron

David W. Charron
Attorney of Record for Plaintiffs-Appellants Stephen and Rebecca Veneklase

# CERTIFICATE OF SERVICE

I certify that on August 3, 2010, I caused the foregoing to be served electronically on the following persons via the ECF system:

Gary Schenk
Curt Rypma
Brent Boncher
SCHENK, BONCHER & RYPMA
601 Three Mile Road, N.W.
Grand Rapids, MI 49544

Dated: August 3, 2010

/s/David W. Charron
David W. Charron
Attorney of Record for Plaintiffs-Appellants Stephen and Rebecca Veneklase

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry ("R.E.") No. | Description |
|---|---|
| 1 | Complaint |
| 4 | Answer and Counterclaim |
| 28 | Plaintiffs' Motion for Summary Judgment |
| 29 | Brief in Support of Plaintiffs' Motion for Summary Judgment |
| 29-1 | Exhibit 1 to Brief in Support of Motion for Summary Judgment, Website Advertisement |
| 29-2 | Exhibit 2 to Brief in Support of Motion for Summary Judgment, HUD Correspondence |
| 29-3 | Exhibit 3 to Brief in Support of Motion for Summary Judgment, Purchase Agreement |
| 29-4 | Exhibit 4 to Brief in Support of Motion for Summary Judgment, Promissory Note |
| 29-5 | Exhibit 5 to Brief in Support of Motion for Summary Judgment, Affidavit of Stephen Veneklase |
| 29-6 | Exhibit 6 to Brief in Support of Motion for Summary Judgment, March 17, 2009 Correspondence |
| 29-7 | Exhibit 7 to Brief in Support of Motion for Summary Judgment, March 24, 2009 Correspondence |
| 29-11 | Exhibit 11 to Brief in Support of Motion for Summary Judgment, Disclosure Statement |
| 29-13 | Exhibit 13 to Brief in Support of Motion for Summary Judgment, Partial Transcript of Summary Disposition Hearing in Kent County Circuit Court |

| 29-14 | Exhibit 14 to Brief in Support of Motion for Summary Judgment, Order of Kent County Circuit Court |
|---|---|
| 32 | Defendant's Brief in Opposition to Motion for Summary Judgment |
| 33 | Plaintiffs' Reply to Defendant's Brief in Opposition to Motion for Summary Judgment |
| 43 | Plaintiffs' First Supplemental Brief in Support of Motion for Summary Judgment |
| 43-1 | Exhibit 1 to First Supplemental Brief in Support of Motion for Summary Judgment, Warranty Deed and Real Estate Transfer Valuation Affidavit |
| 45 | Defendant's Response to Plaintiffs' First Supplemental Brief in Support of Motion for Summary Judgment |
| 50 | Order granting summary judgment in favor of Plaintiffs on Defendant's specific performance counterclaim |
| 51 | Plaintiffs' Second Supplemental Brief in Support of Motion for Summary Judgment |
| 51-1 | Exhibit 1 to Second Supplemental Brief in Support of Motion for Summary Judgment, *Plant v. Merrifield Town Center Ltd. Partnership*, - - - F.R.D. - - -, 2010 WL 1039875 (E.D. Va, March 18, 2010) |
| 54 | Opinion |
| 55 | Order |
| 56 | Notice of Appeal |

# <u>ADDENDUM TO BRIEF</u>

*Hunter v. Estee*, 363 Fed.Appx. 538, 540 (2010) - Case attached hereto



363 Fed.Appx. 538, 2010 WL 358458 (C.A.9 (Cal.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 363 Fed.Appx. 538, 2010 WL 358458 (C.A.9 (Cal.)))

C

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Ninth Circuit Rule 36-3. (Find CTA9 Rule 36-3)

United States Court of Appeals,
Ninth Circuit.
Demondza HUNTER, Plaintiff-Appellant,
v.
D. ESTEE, Correctional Officer; S. Candalot, Assistant Appeals Coordinator; S.H. Garcia, Chief Deputy Warden; G. Galaza, Warden, Corcoran State Prison; Jane Doe, Appeals Coordinator, Calipatria State Prison; John Doe, I, Appeals Coordinator, Corcoran State Prison; R.H. Houston, Chief Deputy Warden, Calipatria State Prison; H.E. Fast; D. Edwards; Mike Corbin, Appeals Coordinator; Brad Streeter Appeals Coordinator; Dario Bravo, Appeals Coordinator, Defendants-Appellees.
No. 06-56431.

Argued and Submitted Jan. 14, 2010.
Filed Jan. 29, 2010.

**Background:** State prisoner proceeding pro se filed civil rights action against prison officials for alleged constitutional violations. The United States District Court for the Southern District of California, Roger T. Benitez, J., **dismissed.** Prisoner appealed pro se.

**Holdings:** The Court of Appeals held that:
(1) remand was required for due process **claim;**
(2) retaliation **claim** was **erroneously dismissed;** and
(3) state law **claim** was **erroneously dismissed** for lack of jurisdiction.

Reversed and remanded.

West Headnotes

**[1] Federal Courts 170B ⟷947**

170B **Federal** Courts
    170BVIII Courts of Appeals
        170BVIII(L) Determination and Disposition of Cause
            170Bk943 Ordering New Trial or Other Proceeding
                170Bk947 k. Further evidence, findings or conclusions. Most Cited Cases
Although state prison officials' failure to accommodate prisoner's allergy and disability did not, standing alone, give rise to liberty interest protected by Due Process Clause, remand of prisoner's civil rights claim was required to determine whether prisoner had liberty interest in avoiding confinement in segregated housing unit (SHU), by reevaluating whether prison's failure to ensure prisoner's proper placement imposed atypical and significant hardship in relation to ordinary incidents of prison life, and to what extent prisoner's stay in SHU affected length of his sentence. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[2] Federal Civil Procedure 170A ⟷2533.1**

170A **Federal** Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)3 Proceedings
                170Ak2533 Motion
                    170Ak2533.1 k. In general. Most Cited Cases
District court **erroneously dismissed** state prisoner's civil rights **claim** against prison officials for retaliation, where state had not moved for summary judgment on that **claim.** 42 U.S.C.A. § 1983.

**[3] Federal Courts 170B ⟷18**

170B **Federal** Courts
    170BI Jurisdiction and Powers in General
        170BI(A) In General

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

170Bk14 Jurisdiction of Entire Controversy; Pendent Jurisdiction

170Bk18 k. Validity or substantiality of **federal claims** and disposition thereof. Most Cited Cases

District court's **dismissal** for lack of jurisdiction over state prisoner's state law **claims** against prison officials was **erroneous**, after **dismissing federal claims**, where **federal claims** also were **erroneously dismissed.** 28 U.S.C.A. § 1367.

*538 Demondza Hunter, Corcoran, CA, pro se.

*539 Karen M. Harkins, Pillsbury Winthrop Shaw Pittman LLP, San Diego, CA, for Plaintiff-Appellant.

Terrence F. Sheehy, Esquire, Deputy Attorney General, Sylvie Snyder, Esquire, Deputy Assistant Attorney General, Office of the California Attorney General, San Diego, CA, for Defendants-Appellees.

Appeal from the United States District Court for the Southern District of California, Roger T. Benitez, District Judge, Presiding. D.C. No. CV-01-02212-RTB.

Before: SCHROEDER, CANBY and McKEOWN, Circuit Judges.

MEMORANDUM [FN*]

FN* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

**1 Demondza Hunter appeals the district court's dismissal of his 42 U.S.C. § 1983 action. The district court found that Hunter did not have a constitutionally protected liberty interest in avoiding confinement in the Segregated Housing Unit ("SHU") at Corcoran State Prison. The district court further found that even if such a liberty interest existed, Hunter's successful administrative appeal "cured" this error. The district court **dismissed** Hunter's

other **claims** as well, and denied Hunter's request to file an untimely summary judgment brief. We reverse and remand for further proceedings.

We review a grant of summary judgment de novo. *United States v. City of Tacoma,* 332 F.3d 574, 578 (9th Cir.2003). We review a district court's denial of an extension of time for abuse of discretion. *United States v. Nguyen,* 262 F.3d 998, 1002 (9th Cir.2001).

[1] The district court correctly noted that the prison's failure to accommodate Hunter's allergy and disability do not, standing alone, give rise to a liberty interest. *Serrano v. Francis,* 345 F.3d 1071, 1078-79 (9th Cir.2003). The district court's determination that Hunter did not have a liberty interest in avoiding confinement in the SHU was based principally upon its interpretation of *Wilkinson v. Austin,* 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). The district court observed that the inmates at Ohio State Penitentiary ("OSP") had a liberty interest in that case in avoiding conditions that were more severe than those in "most solitary confinement facilities." *Id.* at 224, 125 S.Ct. 2384. The district court distinguished *Wilkinson* from this case because placement in OSP was indefinite, subject only to annual review, and OSP inmates were not eligible for parole. *See id.*

The district court apparently assumed that placement in the SHU was not indefinite and was subject to more frequent review. Yet the fact that Hunter spent over 200 days in the SHU after he was ordered released indicates that prison procedures for reviewing placement were inadequate. Thus, Hunter's placement in the SHU was as a practical matter as indefinite as the placement in *Wilkinson. See id.*

The district court also distinguished *Wilkinson* on the ground that in *Wilkinson* OSP inmates were disqualified from parole consideration. The record is unclear, however, as to whether prison officials restored Hunter's good time credits, and whether the six months he spent in the SHU after he was

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

363 Fed.Appx. 538, 2010 WL 358458 (C.A.9 (Cal.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 363 Fed.Appx. 538, 2010 WL 358458 (C.A.9 (Cal.)))

ordered released increased the overall length of his incarceration.

*540 In finding that Hunter's successful administrative appeals "cured" any due process errors he may have suffered, the district court relies on what was for Hunter a Pyrrhic victory. Hunter served six months in the SHU after his successful administrative appeal, and thus his successful appeal did not remedy anything.

On remand the district court should re-evaluate whether the prison's failure to ensure proper placement of Hunter "impose[d an] atypical and significant hardship on [Hunter] in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The district court should also determine to what extent, if any, Hunter's stay in the SHU affected the length of his sentence. *Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir.2003).

**2 [2][3] The district court erred **dismissing** Hunter's retaliation **claim.** The State did not move for summary judgment on this issue, and concedes the district court erred with respect to it. The State also agrees that because of the **Federal** retaliation **claim** the district court should not have **dismissed** Hunter's state law **claim** for lack of jurisdiction. *See* 28 U.S.C. § 1367.

In light of our holding, we need not address whether the district court erred in denying Hunter, a pro se prisoner before the district court, an extension to file supplemental pleadings. We assume that further proceedings and a new briefing schedule on remand will cure any alleged error.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

C.A.9 (Cal.),2010.
Hunter v. Estee
363 Fed.Appx. 538, 2010 WL 358458 (C.A.9 (Cal.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.